Gilmore, J.
This action is prosecuted by the present trustees, in the name and for the use of New London township, against their immediate predecessors as individuals, seeking to hold the latter personally liable for having used moneys duly raised by taxation for the erection of a town hall, in a manner unauthorized by law. The money was used in the purchase and erection of a town hall in the second story of a brick building, of which-neither the first story nor the ground upon which it stands were owned in fee-simple by the township. The hall is 'completed and ready for the use of tlm township. It is not alleged in the petition that it is not substantially constructed, well finished, and of suitable size and proportions to fit it for the purposes intended. There are allegations to the' effect that the township’s use of the hall will not be exclusive and free, but will be subject to annoyances and interferences *456 from the owners or occupiers of the ground and first story. These allegations are not supported by statements of fact that warrant them, and are therefore to be regarded as merely conjectural objections that may never occur. The real ground of complaint set forth in the petition is this: That the hall is not built upon ground owned in fee-simple by the township; and the claim is, that the acts of the defendant trustees, in procuring a hall upon ground not so owned, was wholly unauthorized by law ; and that, having misapplied the money raised, they are personally responsible to the township for the amount thus expended. In short, counsel on both sides agree that the only question in the case is, “ were the actings and doings of the' defendant trustees in the premises authorized by law ? ”
It is settled that neither the township nor its trustees are invested with the general powers of a corporation; and hence the trustees can exercise only those powers conferred by statute, or such others as are necessarily to be implied from those granted, in order to enable them to perform the duties imposed upon them.
To determine whether the trustees in this instance transcended their authority in the premises, reference must be had to the statutory provisions which control the case.
The first to be noticed is: '
The act to authorize the erection, improving, enlarging, or constructing additions to town halls, passed April 2, 1866 (S. & S. 784). • The first section prescribes the mode of giving notice and bringing the question to a vote.
By the second section it is provided, “ that -every voter who is in favor of levying a tax on all the property in the township, incorporated village, or city of the second class as aforesaid, for the erection of such hall, or for improving, enlarging, or constructing additions to town halls already erected, as the case may be, shall indorse on his ballot ‘town hall/ ‘improvement town-hall/ ‘enlargement town hall/ or ‘addition town hall/ as the case may be; and if a majority of all the ballots cast at said election are indorsed as aforesaid, then the trustee's of such township, council of *457 -such incorporated village or city of the second class, shall, -on the first day of June thereafter, inform the auditor of the proper county of the vote of the electors in such township, incorporated village, or city of the second class, as aforesaid, as expressed at said election; and the county auditor shall levy a tax on all the property of such township, incorporated village, or city of the second class, standing on the grand list, for the purpose aforesaid, to enable, the trustees of such township, the council of such incorporated village or city of the second class, to purchase a lot, if necessary, upon which to erect said hall. And it shall be lawful for the trustees of any township, council of any incorporated village, or city of the second class, in which a town hall shall have been erected at any time, to levy a tax upon all the property of said township, incorporated village, or city of the second class subject to taxation, for the purpose of painting, repairing, or discharging any existing debt incurred in the erection or purchase of such hall, -or in the improving, enlarging, or constructing additions to such hall.”
The third section provides, “ that said hall, and the grounds upon which it is erected, shall be under the control of the trustees of the township, if erected by a township; and of the council, if erected by an incorporated village or city of the second class.”
It is under a construction of the ¡provisions of this act alone that counsel for plaintiffs claims that the judgment below should be reversed. But if there are other statutory provisions in force on this subject, they must all be considered and construed together. This becomes the more necessary from the fact that the lauguage of the act above quoted from is so uncertain and ambiguous in every respect that resort must be had to any aids, intrinsic or extrinsic, within reach, in order that its provisions may be made harmonious and intelligible. Counsel for plaintiffs in argument says: “ Indeed there is not anything absolutely certain about •this statute except that the trustees must buy a lot to put -the hall on.” But with the parenthetical “ if necessary” *458 injected into the clause enabling the trustees to purchase a lot, how can it be said that it is certain that they must purchase a lot? The words “if necessary,” as they occur in the clause, can not be rejected. Some effect must be given to them. Looking alone to the language of the act, there is nothing by which the meaning of the legislature, in using these words, can be ascertained with certainty.
The effect of the words “ if necessary,” as they are used, without reference to extrinsic matters, would be to clothe the trustees with an unqualified discretionary authority in reference to the purchase of a lot on which to build the hall. The third section does not in terms qualify any discretionary authority with which the trustees were previously clothed; and if they were clothed with authority to procure a town hall, in other ways than by owning or purchasing a lot, and building a hall upon it, this section imposes no restrictions upon the exercise of such authority. Its effect would be to give the trustees control of the hall, if procured in any lawful manner, otherwise than by being built upon ground owned by the township; and, if built upon ground owned by the township, then the control of both the hall and the ground would be vested in the trustees by the terms of the section—a legal consequence that would follow from the absolute ownership, irrespective of the provisions of the third section. The principal purpose of this section was to designate the body that should liavecontrol of the property in each instance; the act having conferred power to build halls upon more than one body corporate. The third section, therefore, does not either control or even aid us in the construction of the clause “to-enable the trustees of such township, the council of such incorporated village or city of the second class, to purchase a lot, if necessary, upon which to erect said hall.”
This clause is a several grant of additional powers to three distinct and separate bodies corporate, to be exercised by either if necessary to accomplish the object desired;, but, if there existed reasons, such as a village already owning a suitable lot upon which to erect the hall, or the town *459 ship trustees were already clothed with powers to acquire such property by other means than by building a hall upon ground owned in fee-simple by the township, then each of the bodies for itself, and in view of the circumstances and existing powers, was, in its discretion, to determine upon the necessity of purchasing a lot upon which to build the hall. It left each body named at liberty to exercise all the powers with which it had been clothed by previous legislation on the same subject-matter, and conferred additional discretionary power of purchasing a lot upon which to erect the hall, if such purchase should be deemed necessary.
In this view, it is unnecessary to look to the powers previously conferred, if any, upon the councils, respectively, of incorporated villages or cities of the second class upon this subject, as the question before us relates exclusively to township trustees.
Agreeing with counsel for the plaintiffs in error that one of the principal objects in the erection of a town hall is to furnish the people with a place “ where they can be secure and undisturbed in holding their elections and transacting their other township business,” it follows that the “ town hall” provided for under the act of 1866, where the people of a township desire it, is but a substitute for the “ township house,” which the trustees, under the act of 1858 (S. & C. 1565), were required to procure for the people of each township to hold their elections and township meetings in ; and it seems to us that the provisions of this latter act in reference to township houses, and the modes of procuring them, may also apply to the procuring of a town hall for the use of the people of a township, when they may desire it. The twenty-fourth section of the act of 1853, above alluded to, provides as follows :
“ The trustees of each township in this state shall have power to determine on and fix the place of holding elections within their townships, for which purpose they are hereby authorized to lease any house already erected, or contract for, on permanent lease or otherwise, a site, and *460 erect thereon, a house for the purposes aforesaid; and they •shall give previous notice, as in case of township meeting. The trustees, at every election or township meeting, shall have power to cause any and every disorderly person to be removed, and, if necessary, confined until the close of such election or meeting; and every constable present shall obey their orders and directions, for the purpose of preserving order at such meeting.”
This section is still in force, and it confers upon the trustees very broad discretionary powers as to the mode of securing a place in which to hold elections and township meetings; and also constitutes them conservators of the peace, with power to preserve order at all elections and township meetings held at such place—a power that might be exercised at a “town hall” on election day as well as at a “ townsifip house.” The additional power of purchasing a lot (if necessary) upon which to erect the hall, conferred by the act of 1866, is no limitation upon the power of the trustees to obtain, by any of the means provided by the section last above quoted, a suitable town hall for the people of a township. Taken and construed together, the portions above quoted from the two acts, in our opinion, conferred authority upon the trustees of New London township to make the contracts and provide the town hall in the manner it has been done in this case.
In addition, it may be remarked that by the contract made by the trustees in this case, the township acquires a permanent legal and equitable title to real estate, which is absolutely exclusive so far as it relates to the town hall, in the possession and use of which the law will as fully and completely protect the township as if it owned the fee-simple title to the ground upon which it stands; and by it the people of the township obtain all the benefits that were intended to be conferred by the law. Under these circumstances, the trustees should be held personally l’esponsible to the township for moneys officially expended by them, •only when it is shown that they acted wholly without authority.
*461 The demurrer to the petition was properly sustained by the Court of Common Pleas.

Judgment affirmed.

Welch, C. J., White, Rex, and McIlvaine, JJ., concurred.